UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 19-61719-CIV-SMITH

CHANEL, INC.,

      Plaintiff,

vs.

8CREPLICACHANEL.COM, *et al.*,

      Defendants.

                                       /

## **ORDER GRANTING APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION**

THIS CAUSE came before the Court upon Plaintiff's Application for Entry of Preliminary Injunction (the "Application") [DE 5]. The Court has carefully reviewed the Application and the record and is otherwise fully advised in the premises.

By the instant Application, Plaintiff, Chanel, Inc. ("Plaintiff") moves for entry of a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"), pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

The Court convened a hearing on July 29, 2019, at which only counsel for Plaintiff was present and available to present evidence supporting the Application [DE 5]. Because Plaintiff has satisfied the requirements for the issuance of a preliminary injunction, the Court will now grant Plaintiff's Application for Preliminary Injunction [DE 5].

## I. Factual Background[1]

Plaintiff is the owner of the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Chanel Marks"):

| Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CHANEL | 0,626,035 | May 1, 1956 | IC 018 - Women's Handbags |
| (CC logo in circle) | 1,241,264 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Tee-Shirts, Coats, Raincoats, Scarves, Shoes And Boots |
| CHANEL | 1,241,265 | June 7, 1983 | IC 025 - Suits, Jackets, Skirts, Dresses, Pants, Blouses, Tunics, Sweaters, Cardigans, Coats, Raincoats, Scarves, Shoes and Boots |
| (CC logo) | 1,314,511 | January 15, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| CHANEL | 1,347,677 | July 9, 1985 | IC 018 - Leather Goods-Namely, Handbags |
| (CC logo) | 1,501,898 | August 30, 1988 | IC 006 - Keychains<br>IC 014 - Costume Jewelry<br>IC 025 - Blouses, Shoes, Belts, Scarves, Jackets, Men's Ties<br>IC 026 - Brooches and Buttons for Clothing |
| CHANEL | 1,733,051 | November 17, 1992 | IC 018 - Leather Goods; namely, Handbags, Wallets, Travel Bags, Luggage, Business and Credit Card Cases, Change Purses, Tote Bags, Cosmetic Bags Sold Empty, and Garment Bags for Travel |
| (CC logo) | 1,734,822 | November 24, 1992 | IC 018 - Leather Goods; Namely, Handbags, Wallets, Travel Bags, Luggage, Business Card Cases, Change Purses, Tote Bags, and Cosmetic Bags Sold Empty |

---

[1] The factual background is taken from Plaintiff's Complaint, Application for Preliminary Injunction, and supporting Declarations submitted by Plaintiff.

| | | | |
|---|---|---|---|
| J12 | 2,559,772 | April 9, 2002 | IC 014 - Timepieces; Namely, Watches, and Parts Thereof |
| CHANEL | 3,133,139 | August 22, 2006 | IC 014 - Jewelry and Watches |
| ⓒⓒ | 4,074,269 | December 20, 2011 | IC 009 - Protective Covers for Portable Electronic Devices, Handheld Digital Devices, Personal Computers and Cell Phones<br>IC 018 - Key Cases |

(*See* Declaration of Jennifer Bleys in Support of Plaintiff's Application for Preliminary Injunction ("Bleys Decl.") ¶ 4; *see also* United States Trademark Registrations of the Chanel Marks at issue attached as Composite Exhibit 1 to the Complaint [DE 1-2].) The Chanel Marks are used in connection with the manufacture and distribution of high quality luxury goods in the categories identified above. (*See id.* ¶¶ 4-5.)

Defendants, through the fully interactive,[2] commercial Internet websites and supporting domains operating under their domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the

---

[2] Plaintiff asserts multiple Defendants use some of their Subject Domain Names to act as supporting domain names to direct traffic to their fully-interactive, commercial websites, including those operating under other Subject Domain Names, from which consumers can complete purchases. At least one supporting domain, when visited from a search engine such as Google, provides support and redirects consumer traffic to another interactive website operated by the respective Defendant. Other supporting domain names automatically redirect and forward to a fully-interactive, commercial website operated by the respective Defendant. (*See* Bleys Decl. ¶ 10, n.1; *see also* Declaration of Stephen M. Gaffigan in Support of Plaintiff's Application for Preliminary Injunction ("Gaffigan Decl.") ¶ 2, n.1.)

Plaintiff also asserts some Defendants' websites, although interactive, do not offer prices for products and/or the shopping cart feature; rather, consumers are able to browse these Defendants' listings of products bearing Plaintiff's trademarks online via their Internet store and/or blog-style websites and actively exchange data with Defendants, ultimately allowing customers to inquire and make direct purchases via other Internet websites, including those operating under other Subject Domain Names, and/or via e-mail communication with the websites' sellers. (*See* Gaffigan Decl. ¶ 2, n.1; Bleys Decl. ¶ 10, n.2.)

3

Chanel Marks. (*See* Bleys Decl. ¶¶ 9-11; *see also* relevant web pages from Defendants' Internet websites operating under the Subject Domain Names attached as Composite Exhibit 2 to the Complaint [DE 1-3 through 1-5].)

Although each Defendant may not copy and infringe each Chanel Mark for each category of goods protected, Plaintiff has submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the Chanel Marks. (*See* Bleys Decl. ¶¶ 10-11.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the Chanel Marks. (*See id.* ¶¶ 9-11.)

Plaintiff's representative reviewed and visually inspected the detailed web page captures reflecting the products offered for sale[3] bearing the Chanel Marks via Defendants' Subject Domain Names, and determined the products were non-genuine, unauthorized versions of Plaintiff's products, or used images of authentic products in order to facilitate the sale of non-genuine versions of Plaintiff's products. (*See* Bleys Decl. ¶¶ 10-11.)

On July 12, 2019, Plaintiff filed its Complaint [DE 1] against Defendants for federal trademark counterfeiting and infringement, false designation of origin, cybersquatting, common law unfair competition, and common law trademark infringement. On July 12, 2019, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction [DE 5]. On July 16, 2019, this Court entered an Order Granting *Ex Parte* Application for Entry of Temporary Restraining Order (the "TRO") [DE 7] and temporarily restrained Defendants from infringing the Chanel Marks at issue. Pursuant to the Court's July 16, 2019 TRO, Plaintiff properly served Defendants with a copy of the Complaint, and all filings in this matter, and the Court's July

---

[3] Plaintiff alleges Defendants use their e-mail addresses in connection with their counterfeiting activities, to promote, offer for sale, and/or sell goods bearing counterfeits and infringements of Plaintiff's trademarks via the Subject Domain Names; accordingly, Defendants are using their e-mail addresses to facilitate their counterfeiting operations. (*See* Gaffigan Decl. ¶ 2, n.2.)

4

16, 2019 TRO [*see* DE 13, 14, 15]. On July 29, 2019, the Court conducted a hearing on Plaintiff's Application, at which only counsel for Plaintiff was in attendance.

## II.     Legal Standard

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III.     Conclusions of Law

The declarations Plaintiff submitted in support of its Application for Preliminary Injunction support the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, or distribution of goods bearing counterfeits, reproductions, or colorable imitations of the Chanel Marks, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's products that bear copies of the Chanel Marks.

B.     Because of the infringement of the Chanel Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application for Preliminary Injunction, and accompanying declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not that:

1. Defendants own or control Internet websites, domain names, or website businesses which advertise, promote, offer for sale, or sell products bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; and

2. There is good cause to believe that more counterfeit and infringing products bearing Plaintiff's trademarks will appear in the marketplace; that consumers are likely to be misled, confused, or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products and an unnatural erosion of the legitimate marketplace in which it operates.

C. The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of quality products if such relief is not issued.

D. The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

Upon review of Plaintiff's Complaint, Application for Preliminary Injunction, and supporting evidentiary submissions, it is hereby

ORDERED that Plaintiff's Application for Preliminary Injunction [DE 5] is **GRANTED**, according to the terms set forth below:

(1) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Chanel Marks,

or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Chanel Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Chanel Marks, or any confusingly similar trademarks.

(2) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks, or any confusingly similar trademarks, on or in connection with all Internet websites, domain names, or businesses owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3) Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Chanel Marks, or any confusingly similar trademarks, within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms that are visible to a computer user or serves to direct computer searches to Internet websites registered by, owned, or operated by any Defendant, including the Internet websites operating under the Subject Domain Names;

(4) Each Defendant shall not transfer ownership of the Internet websites operating under the Subject Domain Names during the pendency of this action, or until further order of the Court;

(5) Upon Plaintiff's request, the privacy protection service for any of the Subject Domain Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered, to the extent not already done, to disclose to Plaintiff the true identities and contact information of those registrants;

(6) The domain name registrars for the Subject Domain Names shall immediately, to the extent not already done, assist in changing the registrar of record for the Subject Domain Names to a holding account with a registrar of Plaintiff's choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiff have been or will be dismissed from this action, or as to which Plaintiff has withdrawn its request to immediately transfer such domain names. To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries, for the Subject Domain Names, or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the Subject Domain Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiff have been or will be dismissed from this action, or as to which Plaintiff has withdrawn its request to immediately transfer such domain names. Upon the change of the registrar of record for the Subject Domain Names, the New Registrar will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/c0ll4te/index.html whereon copies of the Complaint, this Order, and all

other documents on file in this action are displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action are displayed. After the New Registrar has effected this change, the Subject Domain Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendants;

(7) Each Defendant shall continue to preserve copies of all computer files relating to the use of any of the Internet websites operating under the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Internet websites operating under the Subject Domain Names that may have been deleted before the entry of this Order;

(8) This Order shall apply to the Subject Domain Names, associated websites, and any other domain names and websites which are being used by Defendants for the purpose of counterfeiting the Chanel Marks at issue in this action and/or unfairly competing with Plaintiff on the World Wide Web;

(9) As a matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action or as to which Plaintiff has withdrawn its request for a preliminary injunction;

(10) Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendants may be entitled for a

wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court;

(11) This Order shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

**DONE AND ORDERED** in Fort Lauderdale, Broward County, Florida, this 29th day of July, 2019.

_____
RODNEY SMITH
United States District Judge

Copies provided to:

Counsel of Record

# SCHEDULE "A"
# DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | 8creplicachanel.com |
| 1 | aaachanelshop.com |
| 1 | besthandbagsuu.com |
| 2 | clearanceshoesshop.com |
| 2 | cheapairjordan1.us |
| 2 | cheapadidassuperstar.com |
| 2 | cheapairjordan4.us |
| 2 | cheapairjordan6.us |
| 2 | cheapairmaxforsale.us |
| 2 | cheapnikedunk.us |
| 2 | cheapnikesb.us |
| 2 | cheapniketanjun.us |
| 2 | cheapshoeswebsites.com |
| 2 | cheapstansmith.us |
| 2 | cheapyeezy.us |
| 2 | shoeswholesale.us |
| 2 | shoxoutletshoesstore.com |
| 3 | buyreplicasonline.com |
| 3 | fakemarketonline.com |
| 3 | fakesmarket.com |
| 3 | fakesoulet.com |
| 3 | fakessaleshop.com |
| 3 | forreplicasell.com |
| 3 | happyaaareplica.com |
| 3 | pingreplicahandbags.com |
| 3 | pursesreplicas.com |
| 3 | replicabagsweb.com |
| 3 | replicapursesstore.com |
| 3 | replicasalesshop.com |
| 4 | 012shop.com |
| 4 | gohbee.com |
| 5 | ahandbag.top |
| 5 | bagestore.top |
| 5 | baglvstore.top |
| 5 | baglvstores.top |
| 5 | bagstores.top |
| 5 | chanelbagusa.com |

| | |
|---|---|
| 5 | handbage.top |
| 5 | handbageshop.top |
| 5 | handbagestore.top |
| 5 | inbag.top |
| 5 | louisvuittonhand-bags.top |
| 5 | louisvuittonoutlet.top |
| 5 | louisvuittonshops.top |
| 5 | lvbagsgb.top |
| 5 | lvchanelbags.com |
| 5 | lvusa.top |
| 5 | shophandbags.top |
| 6 | bettyvip.com |
| 7 | chanel-outlet.co |
| 8 | chanelguccius.com |
| 9 | chanelhunter.com |
| 10 | cnshopzone.co |
| 11 | cocojew.com |
| 12 | designerinspiredclothes.com |
| 13 | ebuypurses12a.com |
| 14 | eonbags.com |
| 15 | essenceofluxury.net |
| 16 | fabbag.net |
| 17 | fashion8shops.net |
| 18 | getfloes.com |
| 19 | glamcc.me |
| 20 | hanghieureplica.com |
| 21 | intime04.co |
| 22 | lovebrandbagg.com |
| 23 | righexcellentthandbags.com |
| 24 | shopping-handbags.top |
| 25 | watchpam.com |
| 26 | wholly-jo.co.uk |